## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In Re:<br><br>**KENNETH L. GREEN and**<br>**CYNTHIA R. GREEN,**<br><br>    Debtors. | **Case 12-11393-WHD**<br><br>**Ch. 11** |
| **FREEPORT TITLE & GUARANTY, INC.**<br>**as TRUSTEE OF THE TROUP COUNTY**<br>**THREE TRUST,**<br><br>    Petitioner,<br><br>v.<br><br>**SUMMITBRIDGE NATIONAL**<br>**INVESTMENTS V, LLC**<br><br>    Respondent. | **Adversary Proceeding No. _____** |

## <u>NOTICE OF REMOVAL AND MOTION TO REOPEN</u>

Comes now SummitBridge National Investments V, LLC ("SummitBridge") as successor-in-interest to Creditor Branch Banking & Trust Company ("BB&T") and files this its Notice of Removal and Motion to Reopen the joint bankruptcy case of Debtors Kenneth L. Green and Cynthia R. Green (the "Greens") to bring an adversary proceeding against the Greens and their successor-in-interest Freeport Title & Guaranty, Inc. as Trustee of the Troup County Three Trust (the "Freeport Trustee"). SummitBridge removes this action under 28 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027.

**I.       Background**

Prior to bankruptcy and on February 16, 2007, the Greens executed a promissory note to BB&T in the amount of $320,831.27 and a security deed in the same amount providing BB&T a

security interest in three tracts of land commonly known as: (1) 415 Ashford Circle, LaGrange, Georgia 30240, (2) 210 White Street, Hogansville, Georgia 30230, and (3) 517 Boyd Road, Hogansville, Georgia 30230 (collectively, the "Property"). Claim 6-1.

On May 11, 2012, the Greens filed a petition for Chapter 11 bankruptcy relief. Dkt. No. 1. The Greens included in their schedules their interest in the Property and described the Ashford Circle property as their residence and the White Street and Boyd Road properties as residential rental properties. Dkt. No. 13 at 9. The Property had a total scheduled value of $325,000. Dkt. No. 46 at 2. The Greens also scheduled a secured claim in favor of BB&T[1] secured by the Property. Dkt. No. 13 at 14. This included a first position lien on the White Street and Boyd Road properties and a second position lien[2] on the Ashford Circle property. Dkt. No. 13 at 14. BB&T filed a secured proof of claim in the amount of $231,072.14. Claim 6-1.

On July 22, 2013, the Greens' Amended Plan of Reorganization ("Plan") was confirmed. Dkt. No. 85. The Plan fixed BB&T's claim at $231,072.41 plus additional interest and provided that BB&T would receive monthly payments of $1,557.07 until the debt was paid in full, including post-petition interest or fees allowed under the Bankruptcy Code. Dkt. No. 71 at 9. The Court retained jurisdiction over the case to, among other things, adjudicate disputes related to enforcement of the Plan or administration of the Greens' estate. Dkt. No. 71 at 17-18. At the Greens' request, their case was thereafter administratively closed. Dkt. No. 119.

Since confirmation and on June 28, 2016, BB&T assigned its interest in the Property to SummitBridge via a recorded assignment of security instruments ("Assignment"). A true and correct copy of the recorded Assignment is attached hereto as **Exhibit A** and incorporated by

---

[1] The Greens scheduled the name of the creditor as BB&T Processing Center.

[2] According to the Greens' schedules, Creditor Bayview Financial Loan held a first position lien on the Ashford Circle property. Dkt. No. 13 at 14.

2

reference. On August 16, 2019, the Greens transferred their interest in the Property via a quitclaim deed to the Freeport Trustee. On September 17, 2019, the Freeport Trustee filed its Verified Petition to Quiet Title in the Superior Court of Troup County, Georgia against SummitBridge ("Quiet Title Petition"). A true and correct copy of the Quiet Title Petition and the remainder of the state court record is attached hereto as composite **Exhibit B** and incorporated by reference.

Prior to the transfer, the Greens were in default under the confirmed Plan. Further, SummitBridge and the Greens were negotiating in good faith for repayment of the debt, and these negotiations continued after the date of the transfer to the Freeport Trustee, without the Greens providing any information to SummitBridge about the existence of the transfer. SummitBridge now seeks to reopen the Greens' case so that it may remove the Quiet Title Petition and bring counterclaims for breach of contract related to the confirmed Plan and the promissory note and for fraudulent transfer related to the transfer from the Greens to the Freeport Trustee.

## II.        Motion to Reopen

The Greens' estate has only been administratively closed rather than closed as intended by Section 350 of the Bankruptcy Code. *See In re Garcia*, No. 12-41403-MSH, 2018 WL 3524581, at *3 (Bankr. D. Mass. July 20, 2018) ("In the context of individual debtor chapter 11 cases, the concept of administrative closing appears to be a legal construct intended to represent something qualitatively less final than statutory closing."). Therefore, to what extent SummitBridge needs to seek to reopen this case to remove the Quiet Title Petition is unclear. Regardless, SummitBridge meets the factors necessary to show that this case should be reopened to allow SummitBridge to bring an adversary proceeding to resolve the Quiet Title Petition and to bring claims against the Greens to enforce the Plan and for fraudulent transfer.

"A motion to reopen a bankruptcy case is governed by 11 U.S.C. § 350(b) and Federal Rule of Bankruptcy Procedure 5010." *In re Upshur*, 317 B.R. 446, 450 (Bankr. N.D. Ga. 2004) "A case

3

may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "Motions to reopen are made for a variety of reasons, and they can be made by the debtor, the trustee, or any party in interest." *In re Upshur*, 317 B.R. at 450 (citing Fed. R. Bankr. P. 5010). "The decision on whether to reopen a case is within the sound discretion of the bankruptcy court." *Id.* "[T]he bankruptcy court 'should exercise its discretion based upon the peculiar facts present.'" *In re James*, 487 B.R. 587, 591 (Bankr. N.D. Ga. 2013) (quoting *In re Barger*, 279 B.R. 900, 904 (Bankr. N.D. Ga. 2002)).

"Courts have looked to three interests in determining whether to reopen a closed bankruptcy case: (1) benefit to the debtor; (2) prejudice or detriment to the opponent of reopening; and (3) benefit to the debtor's creditors." *Id.* at 594; *see also In re Odin Demolition & Asset Recovery*, 544 B.R. 615, 628 (Bankr. S.D. Tex. 2016) (providing six factor test). Here, the Greens and the Freeport Trustee likely oppose reopening the case. However, these combined interests do not outweigh the benefit to the Greens' creditors because the Greens and Freeport have colluded to the detriment of those same creditors – SummitBridge. There is case law to suggest that "[w]hen property is sold by the trustee with the approval of the court, the buyer acquires title clear of all claims in bankruptcy." *See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990). However, this rule does not apply when there has been fraud or collusion in that sale. *Id.* Further, courts have held that "[s]ince any property recovered by an avoidance action becomes estate property to be administered," then "[t]he bankruptcy court is obliged to reopen a case when a prima facie case is made that an estate has not been fully administered." *See, e.g., Redmond v. Kopp (In re Kopp)*, 383 B.R. 179, 185-86 (Bankr. D. Kan. 2008). Therefore, the Court should reopen this case to prevent the loss of SummitBridge's interest in the Property through adjudication of the fraudulent transfer claim.

Additionally, in the confirmed Plan, the Court retained jurisdiction over the estate in several relevant aspects including:

> 12.1.7 To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

> 12.1.8 To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

> 12.1.9 To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims; . . .

> 12.1.13 To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan; [and]

> 12.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Case.

Dkt. No. 71 at 17-18. It is clear that SummitBridge seeks to reopen this case pursuant to this Court's retained jurisdiction over the administration of the Greens' bankruptcy case and in particular relevant to the Greens' sale of the Property. Therefore, to the extent necessary, the Court should reopen this case.

## III.    Removal

This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1334. Additionally, removal directly to the bankruptcy court, rather than the district court, is proper. *Gen. Instrument Corp. v. Fin. & Business Servs., Inc. (In re Finley)*, 62 B.R. 361, 364-66 (Bankr. N.D. Ga. 1986) (holding action removed to bankruptcy court was proper because it was automatically referred to bankruptcy court); *see also Indus. Clearinghouse, Inc. v. Mims (In re Coastal Plains, Inc.)*, 326 B.R. 102, 107 (Bankr. N.D. Tex. 2005) ("[T]he majority of courts to look at this issue have found that removal to the bankruptcy court is proper.") (collecting cases); *but see Bridge*

*Assocs., LLC v. North River, LLC (In re Durango Ga. Paper Co.)*, Bankr. No. 02-21669, Adv. No. 09-02008, 2009 WL 5322409, at *2-3 (Bankr. S.D. Ga. May 8, 2009) (holding removal to bankruptcy court instead of district court was improper).

### A.    Jurisdiction over the Quiet Title Petition

The Court has jurisdiction, both bankruptcy and diversity, over the Quiet Title Petition. First, the Court has bankruptcy jurisdiction over the Quiet Title Petition because (1) the Court explicitly retained jurisdiction in the confirmed Plan; (2) the action affects property of the estate; and (3) it is related to the Greens' bankruptcy. Finally, the Court has diversity jurisdiction over the Quiet Title Petition.

### (i)    Bankruptcy Jurisdiction

"[I]t is well settled that the jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is limited initially by statute and eventually by Article III. For subject matter jurisdiction to exist there must be some nexus between the related civil proceeding and the Title 11 case." *In re Lemco Gypsum*, 910 F.2d at 787 (footnote omitted). Under Sections 1334(b) and 157(a), the Court "may exercise 'jurisdiction in three categories of civil proceedings: those that arise under title 11, those that arise in cases under title 11, and those related to cases under title 11.'" *Bridges v. Fay Servicing LLC (In re Bridges)*, Bankr. No. 17-67339, Adv. No. 17-05260, 2018 WL 4292168, at *2 (Bankr. N.D. Ga. Sept. 7, 2018) (quoting *Welt v. MJO Holding Corp. (In re Happy Hocker Pawn Shop, Inc.)*, 212 F. App'x 811, 816 (11th Cir. 2006)).

### (1)    The Court Retained Jurisdiction

First, in the confirmed Plan, the Court retained jurisdiction over "any matter arising out of, or in connection with, any agreement pursuant to which the Debtor sold any of its assets during the Bankruptcy Case." Dkt. No. 71 at 18. Clearly, the Freeport Trustee's Quiet Title Petition is a matter arising out of its agreement with the Greens to purchase the Property. Also, as discussed

above, because the effect of an administrative closing is decidedly less than that of a statutory

closing under Section 350, the Greens' bankruptcy case is still pending.[3]

(2)      The Quiet Title Petition Affects Property of the Estate

Second, the Quiet Title Petition affects property of the estate. *See* 11 U.S.C. §§ 541, 1115

(defining property of the estate). This makes it a core proceeding. *See Wortley v. Bakst*, 844 F.3d

1313, 1318 (11th Cir. 2017) ("Core proceedings are narrow in scope, and include only those cases

that implicate the property of the bankruptcy estate and either invoke substantive rights created by

federal bankruptcy law or that exist exclusively in the bankruptcy context.") The Greens' Plan

provided that:

> Except as otherwise explicitly provided in the Plan, on the Effective Date, all
> property comprising the Estate (including Retained Actions, but excluding property
> that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest
> in Debtor as of the Filing Date, free and clear of all Claims, Liens, charges,
> encumbrances, rights and Interests of creditors, except as specifically provided in
> the Plan. As of the Effective Date, Debtor may operate its businesses and use,
> acquire, and dispose of property and settle and compromise Claims or Interests
> without supervision of the Bankruptcy Court, free of any restrictions of the
> Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly
> imposed by the Plan and Confirmation Order.

Dkt. No. 71 at 15; *see also* 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the

order confirming the plan, the confirmation of a plan vests all of the property of the estate in the

debtor."). Generally, the effect of property revesting in the debtor is that the estate ceases to exist.

*See Oliver v. Toth (In re Toth)*, 193 B.R. 992, 994-97 (Bankr. N.D. Ga. 1996) (analyzing various

interpretations of "vest" as used in plans of reorganization and its effect at confirmation); *1st

Franklin Fin. Corp. v. Baker (In re Baker)*, No. 14-71600-PMB, 2018 WL 4961656, at *3 n.5

(Bankr. N.D. Ga. Oct. 12, 2018) (discussing *In re Toth*).

---

[3] In fact, another creditor has recently filed a motion for relief from stay related to certain property owned
by the Greens. *See* Dkt. No. 121.

7

Here, the Greens' Plan provides otherwise. *See In re Baker*, 2018 WL 4961656, at *4. Specifically, the Plan discusses BB&T's liens on the Property and how they will continue. Dkt. No. 71 at 9 ("BB&T shall retain its second priority lien on the Ashford Circle Property, its first lien position on the Boyd Road Property and its first lien position on the White Street Property to the extent of the Secured Class 4 Claim."). Further, the Plan modified the maturity date of the Greens' loan with BB&T. Dkt. No. 71 at 9. (defining Class 4 Maturity Date). Therefore, the confirmed Plan provided that these interests would remain part of the Greens' bankruptcy estate post-confirmation.

(3)    Related to Jurisdiction

"An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Wortley*, 844 F.3d at 1318-19 (quoting *In re Lemco Gypsum*, 910 F.2d at 788). Further, "[t]he proceeding need not necessarily be against the debtor or the debtor's property." *In re Lemco Gypsum*, 910 F.2d at 788. A quiet title action under Georgia law is related to a bankruptcy case if it would deprive the estate of any interest in property. *See German Am. Capital Corp. v. Oxley Dev. Co., LLC. (In re Oxley Dev. Co., LLC)*, 493 B.R. 275, 286 (Bankr. N.D. Ga. 2013). Here, a finding by the superior court that the Freeport Trustee has title to the Property would confirm that the Greens no longer have any interest in the Property. However, as SummitBridge will show in its defense against the Quiet Title Petition, the transfer from the Greens to the Freeport Trustee was a fraudulent conveyance under Georgia law because the Property was transferred for no consideration. Therefore, the outcome of the Quiet Title Petition will have an effect on the Greens' bankruptcy case, and this Court has related to jurisdiction over it.

8

### (ii)    Diversity Jurisdiction

28 U.S.C. Section 1332(a)(1) provides that this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." SummitBridge bears the burden of proving this Court's jurisdiction. *See Friedman v. N.Y. Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005). "[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016). The parties to the Quiet Title Petition are diverse, and the amount in controversy is satisfied.

### (1)    Diversity of Citizenship

Upon information and belief and based on the allegations in the Quiet Title Petition, the Freeport Trustee is a Georgia corporation with its principal office in Georgia. SummitBridge is a Delaware limited liability company with its principal office in New York. Upon information and belief, none of SummitBridge's members are citizens of Georgia.

### (2)    Amount in Controversy

Courts examine whether the amount in controversy is satisfied at the time of removal. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). Further, "it is an axiom of federal civil judicial procedure that the plaintiff may aggregate all his or her claims against a single defendant for purposes of meeting the jurisdictional amount." *Poore v. American-Amicable Life Ins. Co. of Tex.*, 125 F. Supp. 2d 1378, 1386 n.7 (S.D. Ga. 2000). The Freeport Trustee did not request a sum certain in the Quiet Title Petition; however, it seeks injunctive relief to declare SummitBridge has no interest in the Property. Given the injunctive relief sought, The Quiet Title Petition satisfies the amount in controversy requirements of 28 U.S.C. § 1332.

In the case of injunctive relief, "the amount in controversy is the 'monetary value of the object of the litigation from the plaintiff's perspective.'" *Conable v. U.S. Foodservice, Inc.*, No. 1:05-CV-02887-MHS, 2006 WL 149052, at *4 (N.D. Ga. Jan. 18, 2006) (quoting *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)); *see also Crawford v. Am. Bankers Ins. Co. of Fla.*, 987 F. Supp. 1408, 1413 (M.D. Ala. 1997). Because the Freeport Trustee seeks title to the Property free and clear of SummitBridge's interest, the fair market value of the real property at issue determines the amount in controversy. *See, e.g., Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1048 (11th Cir. 1993); *Coffey v. Nationstar Mortg., LLC*, 994 F. Supp. 2d 1281, 1283 (S.D. Fla. 2014); *McClain v. Bank of Am.*, No. 4:11-CV-305, 2013 WL 1399309, at *5 (S.D. Ga. April 5, 2013).

Here, the confirmed Plan fixed the values of the three tracts of land that form the Property. According to the Plan: the Ashford Circle Property is valued at $180,000;[4] the Boyd Road property is valued at $110,000; and the White Street property is valued at $35,000. Dkt. No. 71 at 8-9. Therefore, the amount in controversy in the Quiet Title Petition is $325,000, well in excess of $75,000. Accordingly, the Quiet Title Petition satisfies the amount in controversy requirements of 28 U.S.C. § 1332. *See, e.g., McClain*, 2013 WL 1399309, at *5. The Court thus has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and SummitBridge may remove this action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446.

### B. Jurisdiction over the Counterclaims

Further, the Court has jurisdiction over SummitBridge's counterclaims because they are core proceedings. *See* 28 U.S.C. § 157(b)(2)(A), (H), (L), (O). The Eleventh Circuit has adopted a

---

[4] According to the Plan, the value of the Ashford Circle property available to BB&T was approximately $5,000 because Bayview Loan Servicing, LLC held a first lien on the Ashford Circle property for the remainder of that property's value. Dkt. No. 71 at 8-9.

two-step test created "to determine whether a claim is a core proceeding . . . : first determine if a proceeding addresses a substantive right created by Title 11, and second, if not, determine if the proceeding could only arise in a bankruptcy case." *First Bank of Dalton v. Manton Family P'Ship, LLLP (In re Manton)*, 585 B.R. 630, 640 (Bankr. N.D. Ga. 2018). A fraudulent transfer claim under Georgia law "is a core proceeding in bankruptcy because (1) fraudulent conveyance is specifically listed as a core proceeding under 28 U.S.C.S. § 157(b)(2), and (2) it invokes a substantive right created by § 544 of the Bankruptcy Code." *Id.* at 641; *see also Zazzali v. Swenson (In re DBSI, Inc.)*, 466 B.R. 664, 665-66 (Bankr. D. Del. 2012) (holding fraudulent transfer claims under Idaho law were core proceedings under 11 U.S.C. § 544 because of 28 U.S.C. § 157(b)(2)(H)). Also, a proceeding to enforce the provisions of a confirmed plan is a core proceeding. *In re Losada*, 557 B.R. 244, 252 (Bankr. S.D. Fla. 2016) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 146 (2009)); *In re U.S. Brass Corp.*, 301 F.3d 296, 305 (5th Cir. 2002)) (holding proceedings under 11 U.S.C. 1142(b), which authorizes bankruptcy court to enter any order necessary for plan consummation, that bankruptcy court had jurisdiction over proceeding that "will certainly impact compliance with or completion of the reorganization plan" even though plan had "been substantially consummated").

## IV.    Conclusion

SummitBridge removes the Quiet Title Petition to this Court because the dispute over the Property should be decided in bankruptcy court. When the Greens sought to avoid SummitBridge's interest in the Property through a fraudulent transfer to the Freeport Trustee, they defaulted under the terms of the confirmed Plan. Therefore, this Court has both original bankruptcy jurisdiction and diversity jurisdiction over the Quiet Title Petition, and removal is proper. A true and correct copy of this Notice of Removal and Motion to Reopen will be filed with the Clerk of the Superior Court of Troup County, Georgia as required by 28 U.S.C. § 1446. Concurrent with the filing of

this Notice of Removal and Motion to Reopen, SummitBridge has served the Freeport Trustee

with a copy of the Notice to Superior Court of Removal to Federal Court, which will be filed in

the Superior Court of Troup County, Georgia. A copy of this Notice, without exhibits, is attached

hereto as **Exhibit C**.

Respectfully submitted this 28th day of October, 2019.

s/ Michael R. Wing
Michael R. Wing
Georgia Bar Number 770463
Austin B. Alexander
Georgia Bar Number 926059

**Balch & Bingham LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
mwing@balch.com
aalexander@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2019, a true and exact copy of SummitBridge National

Investment V LLC's Notice of Removal and Motion to Reopen was filed with the Court using the

CM/ECF system and served upon Freeport Title & Guaranty, Inc. as Trustee for the Troup County

Three Trust via First Class United States Mail at 5775 Glenridge Drive, Building B Suite 550,

Atlanta, GA, 30328, USA care of its registered agent Mike Florence.


/s/ Austin B. Alexander
Austin B. Alexander
Georgia Bar Number 926059

13

# Exhibit "A"

Deed        Doc: ASGN
**Recorded 07/13/2016 12:31PM**

JACKIE TAYLOR
Clerk Superior Court, TROUP County, Ga.
Bk **01838**    Pg **0338-0340**

*(Space above is for Recorder's use)*

Prepared By:
Branch Banking and Trust Company
445 Dexter Avenue, Suite 8000
Montgomery, AL 36104

When Recorded Mail To:
Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

REF118452859A

## ASSIGNMENT OF SECURITY INSTRUMENTS

BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation ("Assignor"), whose address is 445 Dexter Avenue, Suite 8000, Montgomery, AL 36104, Attention: John E. Beasley, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns, transfers, sets over and conveys to SUMMITBRIDGE NATIONAL INVESTMENTS V LLC ("Assignee") whose address is 1700 Lincoln Street, Suite 2150, Denver, CO 80203, all of Assignor's right, title and interest in and to those Security Instruments described on Schedule "A", together with the real property therein described as the same may have been assigned, amended, supplemented, restated or modified.

TO HAVE AND TO HOLD the same unto Assignee and its successors and assigns forever.

This Assignment is made without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever.

Effective as of June 28, 2016.

Bk **01838** Pg **0339**

BRANCH BANKING AND TRUST COMPANY,
a North Carolina banking corporation

By:
Name: John E. Beasley
Title: Senior Vice President

(Affix Bank Seal)

Signed, sealed and delivered
this 27th day of June, 2016
in the presence of:



Unofficial Witness  Annita Bluden

Notary Public

My Commission Expires:  10/27/18

SCHEDULE "A"
Assignment of Security Instruments

Georgia Security Deed and Security Agreement dated February 16, 2007 granted by Kenneth Green and Cynthia Green in favor of Branch Banking and Trust Company and recorded on February 21, 2007 in Book 1393 at Page 706 in the Office of the Clerk of Superior Court of Troup County, Georgia.

Modification Agreement to Georgia Security Deed and Security Agreement dated April 27, 2011 granted by Cynthia Green in favor of Branch Banking and Trust Company and recorded on May 5, 2011 in Book 1610 at Page 716 in the Office of the Clerk of Superior Court of Troup County, Georgia.

# Exhibit "B"

⊕ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
TROUP COUNTY, GEORGIA

**19-CV-0535**
**DUSTIN W. HIGHTOWER**
SEP 17, 2019 05:21 PM

*Jackie W. Taylor*
Jackie Taylor, Clerk
Troup County, Georgia

## General Civil and Domestic Relations Case Filing Information Form

☑ **Superior** or ☐ **State Court of** _____Troup_____ **County**

**For Clerk Use Only**

**Date Filed** ___09-17-2019___  **Case Number** ___19-CV-0535___
**MM-DD-YYYY**

| **Plaintiff(s)** | | | | | **Defendant(s)** | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Freeport Title & Guaranty, Inc. as Trustee | | | | | Summitbridge National Investments V, LLC | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** ___Clark, John___  **Bar Number** ___127347___  **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Automobile Tort
- ☐ General Tort
- ☐ Contract
- ☑ Real Property
- ☐ Civil Appeal
- ☐ Habeas Corpus
- ☐ Restraining Petition
- ☐ Injunction/Mandamus/Other Writ
- ☐ Garnishment
- ☐ Landlord/Tenant
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Adoption
- ☐ Family Violence Petition
- ☐ Other Domestic Relations

**Post-Judgement – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony.
- ☐ Modification
- ☐ Administrative/Other

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____  _____
**Case Number**                          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. §9-11-7.1.

☐ Is interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Needed**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

# SUPERIOR COURT OF TROUP COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  19-CV-0535

Freeport Title & Guaranty, Inc. as Trustee

**PLAINTIFF**

**VS.**

Summitbridge National Investments V, LLC

**DEFENDANT**

Summitbridge National Investments V, LLC
c/o The Corporation Trust Company, Registered Agent
1209 Orange Street
Wilmington, DE 19801

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**John Clark**
**Clark Law Group, LLC**
**17 Executive Park Drive**
**Suite 480**
**Atlanta, Georgia 30329**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 17th day of September, 2019.**

Clerk of Superior Court

*Jackie W. Taylor*

Jackie Taylor/Clerk
Troup County, Georgia

2019 SEP 25 PM 12:06

IN SHERIFF'S HANDS

Page 1 of 1

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
TROUP COUNTY, GEORGIA

**19-CV-0535**
DUSTIN W. HIGHTOWER
SEP 17, 2019 05:21 PM

Jackie Taylor, Clerk
Troup County, Georgia

## IN THE SUPERIOR COURT OF TROUP COUNTY
## STATE OF GEORGIA

FREEPORT TITLE & GUARANTY, INC. as    )
TRUSTEE OF THE TROUP COUNTY THREE     )
TRUST,                                )
                                      )
    Petitioner,                       )     CIVIL ACTION FILE
                                      )     NO._____
v.                                    )
                                      )
SUMMITBRIDGE NATIONAL INVESTMENTS     )
V, LLC,                               )
                                      )
    Respondent.                       )

### VERIFIED PETITION TO QUIET TITLE

NOW COMES Freeport Title & Guaranty, Inc., as Trustee of the Troup County Three

Trust (hereinafter "Petitioner") and show the Court as follows:

1.     This is a quiet title action pursuant to O.C.G.A. § 23-3-40, et seq.

2.     The land which is involved in this proceeding consists of three parcels of land

located in Troup County, Georgia, which are more particularly described at Exhibit "A" attached

hereto and by this reference made a part hereof (hereinafter collectively referred to as the

"Property").  Jurisdiction and venue are proper in this Court.

3.     Petitioner is the owner and in possession of the Property pursuant to that certain

deed made by Kenneth L. Green and Cynthia R. Green (collectively the "Greens") dated August

16, 2019 (the "Deed").  A true and correct copy of the Deed is attached hereto as Exhibit "B".

4.     The Greens conveyed title to the Property to Branch Banking and Trust Company

("BBT") via a Georgia Security Deed and Security Agreement dated February 16, 2007 recorded

in Deed Book 1393, Page 706, Troup County, Records (the "Security Deed").  A true and correct

copy of the Security Deed is attached hereto as Exhibit "C".

5. The Security Deed as a stated final payment of the debt secured thereby as February 19, 2012.

6. The Security Deed was modified by that certain "Modification Agreement to Georgia Security Deed and Security Agreement" dated April 27, 2011, and recorded in Deed Book 1610, Page 716, Troup County, Georgia Records (the "Modification"). The Modification established a "new maturity date of April 27, 2012" of the promissory note secured by the Security Deed. A true and correct copy of the Modification is attached hereto as Exhibit "D".

7. Other than the Modification, no other evidence of any modifications, extensions or renewals to the debt secured by the Security Deed are recorded in the Troup County real estate records.

8. On June 28, 2016, BBT assigned the Security Deed to Respondent Summitbridge National Investments V, LLC ("Summitbridge") by Assignment of Security Instruments (the "Assignment"), recorded in Deed Book 1838, Page 338, Troup County, Georgia Records A true and correct copy of the Assignment is attached hereto as Exhibit "E".

10. Despite having no current interest in the Property due to the reversion of the Secuirty Deed, Summitbridge is now seeking to exercise the power of sale contained in the Security Deed in violation of O.C.G.A. § 48-14-81. A true and correct copy of the advertisement of the foreclosure sale that Summitbridge is running for an October 1, 2019 sale date is attached hereto as Exhibit "F".

11. The Security Deed, as Modified and Assigned is a cloud on the title to Petitioner's Property (the "Adverse Claim"). Petitioner cannot immediately or effectually maintain or protect its rights to the Property by any other course of proceeding other than by the filing of this

2

action. Petitioner seeks by this action to cancel the Adverse Claim, as such operates to throw a cloud of suspicion upon Petitioner's title to the Property and might be vexatiously or injuriously used against Petitioner.

12.     Contemporaneously with the filing of this petition, Petitioner has filed with the Clerk of Superior Court of Troup County, Georgia a notice for record in the lis pendens docket.

13.     Petitioner is entitled to a decree from this Court establishing that Petitioner is the owner in fee simple to the Land, free and clear of all the Adverse Claims.

WHEREFORE, Petitioner respectfully requests the following relief:

a)      That the Court decree that Petitioner is vested with fee simple title to the Land, free and clear of all Adverse Claims,

b)      That a special master be appointed pursuant to O.C.G.A. § 23-3-43 and;

c)      That Petitioner has such other and further relief as is just and equitable.

This 16th day of September, 2019.

Clark Law Group, LLC
17 Executive Park Drive, Ste. 480
Atlanta, Georgia 30329
(404) 760-0070
(404) 920-8126 (fax)

/s/ John C. Clark
John C. Clark
Georgia Bar No. 127347
Tahra T. Porterfield
Georgia Bar No. 721162
Attorneys for Petitioner

3

# EXHIBIT "A"

TRACT ONE:
415 Ashford Circle, LaGrange, GA

All that lot, tract or parcel of land situate lying and being in Land Lots 18 and 19 of the 6th Land District, Troup County, Georgia, being all of Lot 11 of Ashford Place Subdivision as shown on that plat of said subdivision recorded in Plat Book 20B, Page 112, Troup County, Georgia, records and more particularly shown and described on that certain plat of survey prepared by Henry H. Jackson, Georgia Registered Land Surveyor No. 2274, dated June 6, 1990, recorded in Plat Book 33, Page 168, aforesaid records, which plats are by reference incorporated herein and made a part hereof for the purpose of a more complete and accurate description.

The above-described property is subject to the Covenant and Restrictions for Ashford Place Subdivision recorded at Deed Book 457, Page 753, Troup County, Georgia deed records, as amended.

TRACT TWO:
517 Boyd Road, Hogansville, GA

All those lots, tracts, or parcels of land with all buildings and improvements thereon, situate, lying and being in Land Lot 128 of the 12th Land District, Troup County, Georgia, and being Lots Three (3), and Four (4), Block AB@ as per plat of the Oak Spring Subdivision of the J. R. Cooper Estate made by R. M. Ross, C.E., dated April 1941 and recorded in Plat Book 3, Page 2 in the Office of the Clerk of the Superior Court of said Troup County, Georgia.

TRACT THREE:
210 White Street, Hogansville, GA

All that tract or parcel of land with all buildings and improvements thereon, situated in or near the City of Hogansville, County of Troup and State of Georgia, shown on First Supplement to Village Property Map for United States Rubber Company, Stark and Reid Mills, Survey and Plat by Clarence J. White, Jr., dated May 6, 1955, as Lot No. 10 in Block 22, said plat being recorded in the Office of the Superior Court of Troup County, Georgia, in Plat Book 2, Pages 369 and 370.

**EXHIBIT "B"**
**Quitclaim Deed**

eFiled & eRecorded
DATE: 9/4/2019
TIME: 1:14 PM
DEED BOOK: 01992
PAGE: 00161 - 00162
RECORDING FEES: $12.00
PARTICIPANT ID: 9303363123,7067927936
CLERK: Jackie Taylor
Troup County, GA
PT61: 1412019001662

## QUITCLAIM DEED

THIS INDENTURE is made this 16th day of August 2019, by and between KENNETH L. GREEN and CYNTHIA R. GREEN (hereinafter collectively referred to as "Grantor") and FREEPORT TITLE & GUARANTY, INC. as TRUSTEE OF THE TROUP COUNTY THREE TRUST (hereinafter referred to as "Grantee").

## WITNESSETH

FOR AND IN CONSIDERATION of the sum of Ten Dollars 00/100 cents ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor hereby remises, releases, and forever quit claims to Grantee, and Grantee's successors and assigns, all the right, title, interest, claim or demand which Grantor has or may have had in and to all that tract of parcel of land more fully described at Exhibit "A" attached hereto and incorporated herein by reference (hereinafter the "Premises").

TO HAVE AND TO HOLD the said described Premises, unto Grantee, and Grantee's successors and assigns, so that neither Grantor nor any other person or persons claiming under Grantor, shall at any time claim or demand any right, title, or interest to the aforesaid described Premises or its appurtenances.

IN WITNESS, Grantor has executed this document under seal, on the day and year first above written.

As to Grantors, signed,
sealed and delivered
in the presence of:

GRANTORS:

Lisa M. Wilson
Unofficial Witness:

Kenneth L. Green [SEAL]
KENNETH L. GREEN

Notary Public

Cynthia R Green [SEAL]
CYNTHIA R. GREEN

eFiled & eRecorded
DATE: 9/4/2019
TIME: 1:14 PM
DEED BOOK: 01992
PAGE: 00162

## Exhibit "A"

TRACT ONE:
415 Ashford Circle, LaGrange, GA

All that lot, tract or parcel of land situate lying and being in Land Lots 18 and 19 of the 6th Land District, Troup County, Georgia, being all of Lot 11 of Ashford Place Subdivision as shown on that plat of said subdivision recorded in Plat Book 20B, Page 112, Troup County, Georgia, records and more particularly shown and described on that certain plat of survey prepared by Henry H. Jackson, Georgia Registered Land Surveyor No. 2274, dated June 6, 1990, recorded in Plat Book 33, Page 168, aforesaid records, which plats are by reference incorporated herein and made a part hereof for the purpose of a more complete and accurate description.

The above-described property is subject to the Covenant and Restrictions for Ashford Place Subdivision recorded at Deed Book 457, Page 753, Troup County, Georgia deed records, as amended.

TRACT TWO:
517 Boyd Road, Hogansville, GA

All those lots, tracts, or parcels of land with all buildings and improvements thereon, situate, lying and being in Land Lot 128 of the 12th Land District, Troup County, Georgia, and being Lots Three (3), and Four (4), Block AB@ as per plat of the Oak Spring Subdivision of the J. R. Cooper Estate made by R. M. Ross, C.E., dated April 1941 and recorded in Plat Book 3, Page 2 in the Office of the Clerk of the Superior Court of said Troup County, Georgia.

TRACT THREE:
210 White Street, Hogansville, GA

All that tract or parcel of land with all buildings and improvements thereon, situated in or near the City of Hogansville, County of Troup and State of Georgia, shown on First Supplement to Village Property Map for United States Rubber Company, Stark and Reid Mills, Survey and Plat by Clarence J. White, Jr., dated May 6, 1955, as Lot No. 10 in Block 22, said plat being recorded in the Office of the Superior Court of Troup County, Georgia, in Plat Book 2, Pages 369 and 370.

**EXHIBIT "C"**
**Security Deed**

˜˜ 1 3 9 3 PG 0 7 0 6

TROUP COUNTY. GEORGIA
FILED IN OFFICE

2007 FEB 21 PM 1: 53

JACKIE W. TAYLOR
CLERK OF SUPERIOR COURT

**Return to:**
Alex L. Dixon, P.C.
Attorney at Law
313 Greenville Street
P.O. Box 3690
LaGrange, GA 30241

GEORGIA INTANGIBLE TAX PAID

$ 963.00

2/20/07

Jackie W. Taylor
CLERK OF SUPERIOR COURT
Troup County

Prepared by and return to:
BRANCH BANKING & TRUST
295 BULLSBORO DRIVE
NEWNAN, GEORGIA 30263
ATTN: PAULINE V. CRAWFORD
9540890215-00002

# GEORGIA SECURITY DEED AND SECURITY AGREEMENT

### (Collateral is or Includes Fixtures)

THIS SECURITY DEED AND SECURITY AGREEMENT ("Security Deed") is made as of this _____16th_____
day of _____February, 2007_____ by and between:

GRANTOR (Include Address)

KENNETH GREEN and CYNTHIA GREEN

415 ASHFORD CIRCLE

LAGRANGE, GA 30240-0000

jointly and severally.

GRANTEE
BRANCH BANKING AND TRUST COMPANY,
a North Carolina state banking corporation

295 BULLSBORO DR

NEWNAN, GA 30263-1019

☐ IF BOX CHECKED, THIS SECURITY DEED SECURES AN OBLIGATION INCURRED FOR THE
CONSTRUCTION OF AN IMPROVEMENT ON LAND.

THE FOLLOWING INFORMATION APPLIES TO THIS SECURITY DEED:
1. The original principal amount of the Debt (defined below), secured by this Security Deed is
THREE HUNDRED TWENTY THOUSAND EIGHT HUNDRED THIRTY-ONE DOLLARS & 27/100
($_____320,831.27_____) Dollars, plus any present and future advances.

2. The Debt, on the date hereof, is evidenced by a Note and/or other Document described by name, parties,
dollar amount, and date as follows: Promissory Note dated _____02/16/2007_____ in the amount of $_____320,831.27_____
executed by KENNETH GREEN and CYNTHIA GREEN

_____,

(the "Borrower" if not the Grantor) jointly and severally, and may be evidenced by and shall be at all times deemed to
include, any and all other notes or other documents now or hereafter evidencing any debt whatsoever incurred by
Grantor, or any of them, payable to Grantee, the terms of which are incorporated herein by reference.

3. Pursuant to the provisions of O.C.G.A. § 44-14-1, et seq., this Security Deed secures the payment of the Debt,
including present and future advances.

4. The current principal amount of the Debt advanced on the date hereof (including any outstanding amounts
advanced previously) by Grantee is $_____320,831.27_____ (if none, so state), having a maturity date of
02/19/2012.

5. Any future advances shall be evidenced by a promissory note or modification agreement and shall be secured
by this Security Deed.

6. The real property which is the subject of this Security Deed is located in or near the City of
LAGRANGE_____, in the County of _____TROUP_____, in the State of Georgia,
and the legal description is set forth as follows:

See Exhibit "A" attached hereto and incorporated herein by this reference.

**Intangible Tax**

Note to Clerk: Intangible tax due in the amount of $ 963.00_____, inasmuch as maturity date is beyond
three (3) years-long term note .00_____ or

Note to Clerk: No intangible tax due, maturity date less than three (3) years - short term note

KLG
CRG

1767GA (0810)

2019 SEP 25 PM 12: 06
IN SHERIFF'S HANDS

STATEMENT OF PURPOSE: In this Security Deed reference shall be made simply to the "Note or other Document", and such a reference is deemed to apply to all of the instruments which evidence or describe the Debt, no matter which is payment, and to all renewals, extensions and modifications thereof, whether heretofore or hereafter executed, and includes without limitation all writings described generally and specifically on the first page of this Security Deed in numbered paragraph 2 above. This Security Deed shall secure the performance of all obligations of Grantor and Borrower to Grantee which are described in this Security Deed, to the Note or other Document, and such performance includes the payment of the Debt. The definition of "Debt" includes: (i) the principal; (ii) all accrued interest including possible fluctuations of the interest rate if so provided in the Note or other Document; (iii) all renewals, modification, additional advances, or extension of any obligation under the Note or other Document (even if such renewals, modifications, additional advances, or extensions are evidenced by new notes or other documents); and (iv) all other obligations of Grantor to Grantee which are described in this Security Deed, or in the Note or other Document, (for example, payment of the attorneys fees of the Grantee, insurance premiums, ad valorem taxes, environmental reports and appraisals); and (v) any and all other indebtedness, whether direct or indirect, owing or to be owed by Grantor or Borrower, or any of them, to Grantee, including without limitation any advances made to pay drawings on any irrevocable standby or commercial letter of credit issued on the account of the Grantor or Borrower pursuant to an application therefor.

NOW THEREFORE, for the purposes and under the conditions described in the Security Deed and in consideration of the Debt and the mutual promises of Grantor and Grantee, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Grantor hereby conveys to Grantee, with power of sale, the real property described in the Security Deed, together with any improvements, equipment and fixtures existing or hereafter placed on or attached to this real property. All proceeds thereof and all other appurtenant rights and privileges. The term "the Property" shall include this real property any such improvements, fixtures, and also appurtenant rights and privileges.

This Security Deed is intended to constitute a security agreement as required under the Uniform Commercial Code of the State of Georgia and in further intended to operate and be construed as a deed passing title to the property to Grantee under the provisions of the laws of the State of Georgia relating to deeds to secure debt and not as a mortgage including without limitation Chapter 44-14 of the Official Code of Georgia Annotated and those items on Exhibit B attached hereto and incorporated herein by this reference, if applicable.

TO HAVE AND TO HOLD the Property, to Grantee, its successors and assigns, and under the terms and conditions of this Security Deed, to which Grantor and Grantee hereby agree:

1. PERFORMANCE BY GRANTOR. Grantor shall fulfill all of Grantor's obligations set forth in this Security Deed, the Note or other Document.

2. TAXES, DEEDS OR TRUST, OTHER ENCUMBRANCES. Grantor shall make timely payment of all ad valorem taxes, assessments or other charges or encumbrances which may constitute a lien upon the Property. Grantor shall timely pay and perform any obligation, covenant or warranty contained in any other Security Deed or writing (herein Other Security Deed) which gives rise to any or which may constitute a lien upon any of the Property. Grantor shall upon request of Grantee promptly furnish satisfactory evidence of such payment or performance. Grantor shall not enter into, terminate, cancel or amend any lease affecting the Property or any part thereof without the prior written consent of Grantee. Grantor shall timely pay and perform all terms of any leases or sublease of the Property or any part thereof.

3. INSURANCE. Grantor shall keep insured all improvements which are now existing and which might hereafter become part of the Property, against loss by fire and other hazards, casualties and contingencies in such amounts and for such periods as may be required from time to time by Grantee, and Grantor shall pay promptly, when due, any premiums on the insurance. All insurance shall be carried with companies approved by Grantee, and Grantor shall cause all policies and renewals thereof to be delivered to Grantee, and the policies shall contain loss payable clauses in favor of and in form acceptable to Grantee, the policies to further contain mortgage clauses in favor of and in form acceptable to Grantee and shall include a "New York" mortgage clause. In the event of loss, Grantor shall give immediate notice to Grantee, and Grantee may make proof of loss if such is not made promptly be Grantor. Any insurer is hereby expressly authorized and directed to make payment for the loss directly and solely to Grantee. Further Grantee may apply the insurance proceeds, or any part thereof, in its sole discretion and at its option, either to the reduction of the Debt or to the restoration or repair of any portions of the Property damaged.

4. ESCROW DEPOSITS. Upon demand of Grantee, Grantor shall deposit with or add to each payment required under the Note or other Document the amount estimated by Grantee to be sufficient to enable Grantee to pay as they become due all taxes, charges, assessments, and insurance premiums which Grantor is required to pay. Further, any deficiency occasioned by an insufficiency of such additional payments shall be deposited by Grantor with Grantee upon demand.

5. PRESERVATION AND MAINTENANCE OF THE PROPERTY. Grantor shall keep the Property in good order and repair as it now is (reasonable wear and tear excepted) and shall neither commit nor permit any waste or any other occurrence of use which might impair the value of the Property. Grantor shall not initiate or acquiesce in a change in the zoning classification of the Property or make or permit any structural alteration thereof without Grantee's prior written consent.

6. COMPLIANCE WITH LAWS. Grantor shall regularly and promptly comply with any applicable legal requirements of the United States, the State of Georgia or other governmental entity, agency or instrumentality relating to the use or condition of the Property.

7. CONDEMNATION AWARD. Any award for the taking of, or damages to , all or any part of the Property or any interest therein upon the lawful exercise of the power of eminent domain shall be payable solely to Grantee, which may apply the sums so received payment of the Debt.

8. PAYMENT BY GRANTEE. If Grantor or Borrower shall be in default in the timely payment or performance of any of Grantor's or Borrower's obligations, the Note or other document, under this Security Deed or Other Security Deed, Grantee may, but it is not obligate to, expend for the account of Grantor any sums, expenses and fees which Grantee believes appropriate for the protection of the Property and the maintenance and execution of this trust. Any amounts so expended shall be deemed principal advances fully secured by this Security Deed, shall bear interest from the time expended until paid at the rate of interest accruing on the debt, and shall be due and payable on demand.

9. RENTS AND PROFITS. Grantor hereby assigns to Grantee all future rents and profits from the Property as additional security for the payment of the Debt and for the performance of all obligations secured by this Security Deed. Grantor hereby appoints Grantee as Grantor's attorney-in-fact, which is coupled with an interest and is irrevocable to collect any rents and profits, with or without suit, and to apply the same, less expenses of collection, to the Debt or to any obligations secured by this Security Deed in any manner as Grantee may desire. Such appointment shall be a power coupled with an interest and shall remain in full force and effect as long as any portion of the Debt remains outstanding. However, until default under the Note or other Document or under this Security Deed, Grantor may continue to collect and retain the rents and profits without any accountability to Grantee. Grantee's election to pursue the collection of the rents or profits shall be in addition to all other remedies which Grantee might have and may be put into effect independently of or concurrently with any other remedy.

10. GRANTOR'S CONTINUING OBLIGATION. This Security Deed shall remain as security for full payment of the Debt and for performance of any obligation evidenced by the Note or other Document, notwithstanding any of the following: (a) the sale or release of all or any part of the Property; (b) the assumption by another party of Grantor's obligations under this Security Deed, the Note or other Document; (c) the forbearance or extension of time for payment of the Debt or for performance of any obligations under the Security Deed, the Note or other Document, whether granted to Grantor or to a subsequent owner of the Property; (d) the release of any party who has assumed payment of the Debt or who assumed any other obligations under this Security Deed, the Note or other Document. None of the foregoing shall, in any way, affect the full force and effect of the lien of this Security Deed or impair Grantee's right to a deficiency judgement in the event or foreclosure against Grantor or any party who has assumed payment of the Debt or who assumed any other obligations the performance of which is secured by this Security Deed. Grantee may, in its sole discretion, from time to time waive or forebear from enforcing any provision of this Security Deed, and no such waiver or forbearance shall be deemed a waiver by Grantee of any right or remedy provided herein or by law or be deemed a waiver of the right at any later time to enforce strictly all provisions of this Security Deed and to execute any and all remedies provided herein and by law.

11. SECURITY INTEREST. All the fixtures and equipment which comprise a part of the Property shall, as far as permitted by law, be deemed to be affixed to the aforesaid land and conveyed therewith. As to the balance of the fixtures, this Security Deed shall be considered to be a security agreement which creates a security interest in such fixtures for the benefit of Grantee. In that regard, Grantor grants to Grantee all of the rights and remedies of a secured party under the Georgia Uniform Commercial Code. Grantor agrees to execute and deliver to Grantee, concurrently with the execution of this Security Deed and upon the request of Grantee from time to time hereafter, all financing statements and other documents reasonably required to perfect and maintain the security interest created hereby. Grantor hereby irrevocably (as long as the Debt remains unpaid) makes, constitutes and appoints Grantee as the true and lawful attorney of Borrower, which power is coupled with an interest and is irrevocable, to sign the name of Grantor on any financing statement, continuation of financing statement or similar document required to perfect or continue such security interests. However, to the extent allowed by law, this Security Deed shall be a financing statement sufficient to perfect and maintain any security interest created hereby in the Property and its Proceeds. In addition, Grantor agrees to execute a UCC-2 Notice of

1767GA (0810)

PT 1393 PG 0707

Page 2 of 6

1393 PG 0708

Fixture Filing and to cause same to be filed in the real estate records of the county in which the real property is located in additionally evidence the security interest granted in and to said fixtures. Any reproduction of this instrument or of any other security agreement or financing statement shall be sufficient as a financing statement for purposes of equipment and personality. Upon Grantor's breach of any covenant or agreement of Grantor contained in this Instrument, including the covenant to pay when due all sums secured by this Instrument, Grantee shall have the remedies of a Secured Party under the Uniform Commercial Code of Georgia. In exercising any of said remedies, Grantee may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Grantee's remedies under the Uniform Commercial Code as promulgated by the State of Georgia or the other remedies set forth in paragraph 18 of this Instrument. Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property or adapted for use therein which is described or reflected in this Security Deed, is, and at all times and for all purposes and in all proceedings, both legal or equitable, shall be regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physical attached to the improvements; (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Security Deed; or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time. Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Grantee's interest as lessor in any present of future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Security Deed or affect the priority of Grantee's security interest and granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clause (i), (ii) or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the appropriate Uniform Commercial Code records. Grantor warrants that the location of collateral is or will be upon the Property (excepting materials intended to be located thereon and stored temporarily off site). Grantor covenants and agrees with grantee that Grantor will promptly execute any financing statements or other instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its priority status.

12. INDEMNIFICATION IN EVENT OF ADVERSE CLAIM. In the event that Grantee voluntarily or otherwise shall become a party to any suit or legal proceeding involving the Property, it shall be saved harmless and shall be reimbursed by Grantor for any amounts paid, including all costs, charges and reasonable attorney's fees incurred in any such suit or proceeding, and the same shall be secured by this Security Deed and payable upon demand.

13. INSPECTION. Grantee may at any reasonable time and from time to time make or cause to be made reasonable entries upon and inspections of the Property.

14. WARRANTIES. Grantor covenants with Grantee that Grantor is seized of the Property in fee simple, has the right to convey the same in fee simple, that title to the Property is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever, subject only to any declarations, easements, restriction or encumbrances listed in the title option or title insurance policy which Grantee obtained in the transaction in which Grantee obtained this Security Deed.

15. ATTORNEYS' FEES. In the event that Grantor or Borrower shall default in its obligations under this Security Deed, the Note or other Document, and Grantee employs and attorney to assist in the collection of the Debt or to enforce compliance of Grantor with any of the provisions of this Security Deed, the Note or other Documents or in the event Grantor, Borrower or Grantee shall become parties to any suit or legal proceeding (including any proceeding conducted before any United States Bankruptcy Court) concerning the Property, concerning the lien of this Security Deed, concerning collection of the Debt or concerning compliance by Grantor with any of the provisions of this Security Deed, the Note or other Document, Grantor shall pay Grantee's reasonable attorneys' fees and all of the costs that may be incurred, and such fees and costs shall be secured by this Security Deed and its payment enforced as if it were a part of the Debt. Grantor shall be liable for such attorneys' fees and costs whether or not any suit or proceeding is commenced.

16. ANTI-MARSHALLING PROVISIONS. Grantee may grant release at any time and from time to time of all or any portion of the Property (whether or not such releases are required by agreement among the parties) agreeable to Grantee without notice or the consent, approval or agreement of other Parties and interests, including junior lienors and Purchasers subject to the lien of this Security Deed and such releases shall not impair any manner of the validity of or priority of this Security Deed on that portion of the Property remaining subject to this Security Deed, nor release Grantor from personal liability for the Debt. Notwithstanding the existence of any other security interests in the Property held by Grantor or by any other party, Grantee shall have the right to determine the order in which any or all portions of the Debt are satisfied from the proceeds realized upon the exercise of any remedy it has. Grantor, or any party who consents to this, or any party who has actual or constructive notice hereof, hereby waives any and all rights to require the marshalling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

17. EVENTS OF DEFAULT. Grantor shall be in default under this Security Deed upon the occurrence of any of the following:

(a) Default in the payment or performance of any of the Debt, or of any covenant or warranty, in this Security Deed, in the Note or other Document, or in any other note of Grantor or Borrower to Grantee or any contract between Borrower or Borrower and Grantee, or in any other contract between Borrower and Grantee made for the benefit of Grantor;

(b) Any warranty, representation or statement made or furnished to Grantee by or on behalf of Grantor or Borrower in connection with this transaction proving to have been false in any material respect when made or furnished; or

(c) Loss, theft, substantial damage, destruction to or of the Property, or the assertion or making of any levy, seizure, mechanic's or materialman's lien or attachment thereof or thereon; or

(d) Death, dissolution, termination of existence, insolvency, business failure, appointment of a Receiver for any part of the property of, assignment for the benefit of creditors by, or the inability to pay debts in the ordinary course of business of the Grantor or Borrower or any co-maker, endorser, guarantor or surety therefor; or

(e) Failure of a Grantor or Borrower or any co-maker, endorser, guarantor or surety for Grantor to maintain its existence as a corporation, partnership or limited partnership, or limited liability company, as applicable, in good standing; or

(f) Upon the entry of any monetary judgement or the assessment of filing of any tax lien against Grantor or Borrower; or upon the issuance of any writ of garnishment or attachment against any property of debts due or rights of Grantor or Borrower; or

(g) The sale (including sale by land contract upon delivery of possession), transfer or encumbrance of all or any part of the Property or any interest therein, or any charge in the ownership or control of any Grantor or Borrower which is a corporation, partnership, or limited partnership, or limited liability company, without Grantee's prior written consent; or

(h) If Grantee should otherwise in good faith deem itself, in security interests, the Property or the Debt unsafe or insecure; or should Grantee otherwise believe in good faith that the prospect of payment or other performance is impaired.

18. REMEDIES OF GRANTEE UPON DEFAULT. Upon Grantor's or Borrower's breach of any covenant in this Instrument or any other document, including, but not limited to the Note, Grantee may, at Grantee's option, declare all of the sums secured by this Instrument to be immediately due and payable without further demand, and may invoke the power of sale herein granted (and Grantor appoints Grantee its agent and attorney in fact to exercise said power of sale) and any other remedies permitted by applicable law or as provided herein. Grantor acknowledges that the power of sale herein granted may be exercised by Grantee without prior judicial hearing. Grantor has the right to bring and action to assert the non-existence of a breach or any other defense of Grantor to acceleration of sale. If Grantee invokes the Power of Sale, Grantee shall mail to Grantor a copy of the Notice of Sale in the manner prescribed by applicable law. Grantee shall advertise and sell the Property according to the laws of the State of Georgia at the time and place and under the terms designated in the Notice of Sale in one or more parcels and in such order as Grantee may determine. Grantee or Grantee's designee may purchase the Property at any sale. If Grantee exercises its nonjudicial foreclosure remedies, the Grantee shall cause advertisement of the time, place and terms of the sale once a week for four (4) consecutive weeks immediately preceding such sale (but without regard to the number of days) in the newspaper in which Sheriff's Sales are advertised in the county of the real property. The advertisement so published shall be sufficient notice to Grantor, and Grantor hereby waives rights to any and all of notices. Grantee's conveyance, at Grantee's option, as to any public sale, may be in fee simple with either warranties of title or without warranties if Grantee shall so elect, and to this end, Grantor hereby constitutes and appoints Grantee, its agent and attorney-in-fact to execute conveyance, and to thereby divest Grantor of all rights, title, interest, equity and equity of redemption that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all of the acts and doing of said agent and attorney in fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale, conveyance, and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtedness secured hereby and shall not be exhausted by one exercise thereof but may be exercised until full payment of all indebtedness secured hereby is paid in full.

1767GA (05/0) *KLG CRL*

In the event of any such foreclosure sale by Grantee, Grantor shall be deemed a tenant holding over an shall forthwith deliver possession to the purchaser of purchasers at such sale or sales or be summarily dispossessed as a tenant at sufferance according to the provisions of law applicable to tenants holding over.

Grantee may adjourn from time to time any sale by it to be made under or by virtue of this Security Deed by announcement at the time and place appointed for such sale for such sale, and except as otherwise provided by any applicable law, Grantee, without further notice of publication and may make such sale at the time and place to which the same shall be so adjourned. In the event of any sale of the Property or any part thereof, the proceeds of said sale shall be applied first to the expenses of such sale and all proceedings in connection therewith including reasonable attorneys' fees and costs of collection, then to taxes and insurance and other items advanced by Grantee to preserve its interest in the Property, then to the payment of late charges and other charges, then to the payment of accrued and unpaid interest, then to the payment of any outstanding principal balance on the Note, with the balance of the secured indebtedness, if any, to Grantor or other creditors if required by applicable law. Grantee at Grantee's option is authorized to foreclose this deed subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Grantee to collect the secured indebtedness.

Further, if a default shall have occurred and be continuing, Grantee may, in addition to the other rights and remedies provided in this Instrument, either with or without entry of taking possession as provided herein or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Security Deed or other loan documents, or any other rights and (ii) to pursue any other remedies available to it, all as Grantee shall determine most effectual for such purposes, including, but not limited to, the exercise of all rights and remedies available to Grantee as a secured party under the Uniform Commercial Code as enacted in the State of Georgia and to exercise all rights and remedies provided to Grantee under the Assignment of Leases conveyed to Grantee in connection with this Loan. In case Grantee shall have proceeded to enforce any right, power or remedy under this Security Deed by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then and in every such case, Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had taken place. Grantee shall have the power (i) to institute and maintain any suits and proceedings as Grantee may deem expedient to prevent any impairment of the Property by acts which may be unlawful or any violation of the Security Deed; (ii) to preserve or protect its interest in the Property and the rents, issues, profits and revenues arising therefrom; and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor or the creditors or property of Grantor, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary of advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount of the indebtedness at the date of the institution of such proceedings and for any additional portion of the indebtedness accruing after such date.

In addition, if a default shall have occurred and be continuing, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of right without notice and without regard to the occupancy or value of any security for the indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and operate the Property and collect and apply the revenues and the Grantor hereby consents thereto. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor will pay to Grantee upon demand, all expenses, including receivers' fees, reasonable attorneys' fees, costs and agent's compensation, all incurred pursuant to such receiver appointment and all such expenses could be considered a portion of the indebtedness secured hereby.

19. **RELEASE AND CANCELLATION.** Upon fulfillment of all obligations, the performance of which is secured by this Security Deed, and upon payment of the Debt, this Security Deed and the Note or other Document shall be marked "Satisfied" and returned to Grantor, and this conveyance shall be null and void and may be cancelled of recorded at the request and cost of Grantor, and title to the Property shall revest as provided by law.

20. **MISCELLANEOUS.** The captions and headings of the paragraph of this Security Deed are for convenience only and shall not be used to interpret or define any provisions. All remedies provided herein are distinct and cumulative to any other right or remedy under this Security Deed or afforded by law or equity,and may be exercised concurrently, independently or successively. All covenants contained herein shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors or assigns. Whenever used the singular number shall include the plural, and the plural the singular, and the use of any gender shall be applicable to all genders. This Security Deed shall be governed by and construed under Georgia law. Any forbearance by Grantee in exercising any right to remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Grantee shall not be a waiver of Grantee's right to accelerate the maturity of the Debt. Time is of the essence in the payment or performance of any of the obligations, or of any covenant or warranty contained in this Security Deed or in the Note, or other Document, and riders, exhibits or addenda attached hereto shall be deemed incorporated herein by this reference.

21. **WAIVER OF TRIAL BY JURY. ONLY TO THE EXTENT ALLOWED BY APPLICABLE LAW, THE UNDERSIGNED HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS SECURITY DEED OR ANY LOAN DOCUMENT EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND GRANTEE. THIS PROVISION IS A MATERIAL INDUCEMENT FOR GRANTEE TO MAKE THE LOAN SECURED BY THIS SECURITY DEED. FURTHER, THE UNDERSIGNED HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF GRANTEE, NOR GRANTEE'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT GRANTEE WOULD NOT SEEK TO ENFORCE THIS WAIVER OR RIGHT TO JURY TRIAL PROVISION IN THE EVENT OF LITIGATION. NO REPRESENTATIVE OR AGENT OF GRANTEE, NOR GRANTEE'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

IN TESTIMONY WHEREOF, each individual Grantor has hereunto set his hand and adopted as his/her seal the word "SEAL" appearing beside or near his/her signature, this sealed instrument being executed and delivered on the date first above written.

Grantor: _____ (SEAL)    Grantor: _____ (SEAL)
KENNETH GREEN                          CYNTHIA GREEN

Grantor: _____ (SEAL)    Grantor: _____ (SEAL)

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

[NOTARIAL SEAL]

Commission Expiration Date: _____

The debt which this instrument was given to secure having been paid in full, this instrument is hereby cancelled and the Clerk of Superior Court of _____ County is hereby authorized and directed to mark it satisfied of record. This _____ day of _____, _____.

By: _____

_____
(Print Name)

1393PG0709

_____
(Title)
Witness: _____

1767GA (0810)                                                                 Page 4 of 6

BK 1393 PG 0710

## EXHIBIT "A"

[Attach Legal Description]

TRACT ONE:
415 Ashford Circle, LaGrange, GA

All that lot, tract or parcel of land situate lying and being in Land Lots 18 and 19 of the 6th Land District, Troup County, Georgia, being all of Lot 11 of Ashford Place Subdivision as shown on that plat of said subdivision recorded in Plat Book 20B, Page 112, Troup County, Georgia, records and more particularly shown and described on that certain plat of survey prepared by Henry H. Jackson, Georgia Registered Land Surveyor No. 2274, dated June 6, 1990, recorded in Plat Book 33, Page 168, aforesaid records, which plats are by reference incorporated herein and made a part hereof for the purpose of a more complete and accurate description.

The above-described property is subject to the Covenant and Restrictions for Ashford Place Subdivision recorded at Deed Book 457, Page 753, Troup County, Georgia deed records, as amended.

TRACT TWO:
517 Boyd Road, Hogansville, GA

All those lots, tracts, or parcels of land with all buildings and improvements thereon, situate, lying and being in Land Lot 128 of the 12th Land District, Troup County, Georgia, and being Lots Three (3), and Four (4), Block AB® as per plat of the Oak Spring Subdivision of the J. R. Cooper Estate made by R. M. Ross, C.E., dated April 1941 and recorded in Plat Book 3, Page 2 in the Office of the Clerk of the Superior Court of said Troup County, Georgia.

TRACT THREE:
210 White Street, Hogansville, GA

All that tract or parcel of land with all buildings and improvements thereon, situated in or near the City of Hogansville, County of Troup and State of Georgia, shown on First Supplement to Village Property Map for United States Rubber Company, Stark and Reid Mills, Survey and Plat by Clarence J. White, Jr., dated May 6, 1955, as Lot No. 10 in Block 22, said plat being recorded in the Office of the Superior Court of Troup County, Georgia, in Plat Book 2, Pages 369 and 370.

*KLG*

*CRS*

### EXHIBIT "B"

DEBTOR:

KENNETH GREEN

CYNTHIA GREEN

SECURED PARTY:

Branch Banking and Trust Company
295 BULLSBORO DR
NEWNAN, GA 30263-1019

X  (a)   All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators and related machinery and equipment; all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, or which may now or hereafter be used or obtained in connection therewith, including, without limitation, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, contract rights, chattels,general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Debtor or on behalf thereof, all trade names, trademarks, service marks, logos, patents and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor, and all accounts, chattel paper, contract rights, documents, equipment, fixtures, and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Land as between the parties hereto and all persons claiming by, through or under them.

X  (b)   All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Debtor.

X  (c)   All income (including but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such emitlements, and all the estate, right title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed And Agreement executed by Debtor in favor of Secured Party.

X  (d)   All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractor, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

X  (e)   Any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

X  (f)   All of Debtor's computer equipment, including, but not limited to, operating manuals and tools, computers, printers, monitors and all accessions thereto and all hardware and software installed therein, all customer lists, corporate books and records, service and operating manuals, all computer records, including floppy disks and internal hard drives, tax refunds, licenses, equipment leases and rights under manufacturers' warranties, and all proceeds therefrom, whether cash, insurance or otherwise.

X  (g)   All equipment, including goods, of every kind and character now or hereafter owned by Debtor including fixtures, machinery, equipment, appliances, vehicles and other like personal property, conditional sales contracts, chattel mortgages or other similar liens or claims, together with the benefit of any deposits or payments now or hereafter made by Debtor or on behalf of Debtor, all trade fixtures, plumbing, elevators, related machinery and equipment, appliances, building supplies and materials together with any and all accessions, parts, attachments, tools, operating manuals and all replacements thereof, as well as any contract rights, choses in action, and general intangibles all considered equipment, as well as products and proceeds therefrom, whether by cash, insurance or otherwise, which Debtor may now own or hereafter at any time acquire.

X  (h)   All inventory now or hereafter acquired by Debtor, together with all related contract rights, instruments, conditional sales contracts, or other similar liens or claims, together with the benefit of any deposit or payment now or hereafter made by Debtor or on behalf of Debtor, chattel paper, documents, general intangibles, goods, related building supplies and materials, parts, accessories, attachments, operating manuals and all replacements thereof which comprise Debtor's inventory, and vehicles which are Debtor's inventory, and all other interests of every kind and character which Debtor may now own or hereafter at any time acquire, together with proceeds and products acquired with cash, insurance or other proceeds of the inventory described herein.

X  (i)   All accounts including, but not limited to, accounts receivable, books and records, contract rights, documents, checks, notes, drafts, conditional sales contracts, chattel paper or other similar liens or claims, together with the benefit of any deposits or payments now or hereafter made by Debtor or on behalf of Debtor, acceptances and other forms of obligations and receivables, general intangibles, income, profits and other monies generated from said accounts, and instruments, as well as proceeds acquired with cash, insurance, or other proceeds of any of the property described herein and all other interests of every kind or character and all of the above-referenced accounts described herein which Debtor may now own or at any time hereafter acquire, including proceeds and products therefrom.

_____ (j)   Other types of collateral including farm products, vehicles (excluding Debtor's personal vehicles, if any), books and records, consumer goods, any other tradenames, trademarks, servicemarks, logos, patents and goodwill which in any way now or hereafter belong, relate or pertain to Debtor or Debtor's business.

Note: Please check all applicable paragraphs.

KLG
CRG

BK 1393 PG 0711

<u>**EXHIBIT**</u>　　　ᵉᵘ 1393 PG0712

GRANTOR:  KENNETH GREEN
　　　　　　 CYNTHIA GREEN
LENDER:　 BRANCH BANKING & TRUST
DATE OF SECURITY DEED:  FEBRUARY 16, 2007

## WAIVER OF BORROWER'S RIGHTS

　　　BY EXECUTION OF THE PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF SAID SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IN SPECIFICALLY REQUIRED TO BE PROVIDED IN SAID SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS SECURITY DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; (5) ACKNOWLEDGES THAT GRANTOR'S RIGHTS TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED IN THIS SECURITY DEED AND NO OTHER; AND (6) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered in the presence of:

_____
Witness

_____
NOTARY PUBLIC

_____ (SEAL)
Grantor  KENNETH GREEN

_____ (SEAL)
Grantor  CYNTHIA GREEN

_____ (SEAL)
Grantor

_____ (SEAL)
Grantor

*[Notary seal: CASSIE F. HUDGINS — NOTARY — EXPIRES — GEORGIA — JULY 29, 2010 — PUBLIC — TROUP COUNTY]*

**ACCOUNT# / NOTE#**
9540890215　00002

1574GA (06/04)

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions, thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrowers Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
**CLOSING ATTORNEY**

Sworn to and subscribed before me
on the date set forth above

_____
**NOTARY PUBLIC**



CASSIE F. HUDGINS
NOTARY
EXPIRES
GEORGIA
JULY 20, 2010
PUBLIC
TROUP COUNTY

PK 1393 PG 0713

**ACCOUNT# / NOTE#**
9540890215    00002

1665GA (0604)

**EXHIBIT "D"**
**Modification**

Deed        Doc: AGRE
**Recorded 05/05/2011 12:52PM**
Georgia Intangible Tax Paid: $0.00
JACKIE TAYLOR
Clerk Superior Court, TROUP County, Ga.
Bk 01610    Pg 0716-0718

Prepared by:   PAULINE V CRAWFORD
Return to: [Must be returned to natural person.]

__BRANCH BANKING & TRUST__
__295 BULLSBORO DRIVE__
__NEWNAN GEORGIA 30263__
ATTN: PAULINE V CRAWFORD
9540890214 00002

Security Deed Recorded at Deed Book 1393___,
Page 0706____, TROUP_____ County, Georgia Records;

## MODIFICATION AGREEMENT
## TO GEORGIA SECURITY DEED AND SECURITY AGREEMENT

This Modification Agreement to Georgia Security Deed and Security Agreement ("Agreement") is made and entered into as of this 27th day of ___April, 2011_____, between KENNETH GREEN

having an address at _415 ASHFORD CIR LAGRANGE, GA 302408898_
(collectively, if applicable "Grantor") and **BRANCH BANKING AND TRUST COMPANY** having an address at _NEWNAN - COMMERCIAL LOANS, 295 BULLSBORO DR, NEWNAN, GA :_ ("Bank"),

*WHEREAS*, Grantor (or CYNTHIA GREEN _____,

if different than Grantor who is referred to herein as "Borrower") is indebted to Bank pursuant to the promissory note dated _____February 16, 2007_____, in the original principal amount of _THREE HUNDRED TWENTY THOUSAND EIGHT HUNDRED THIRTY-ONE DOLLARS & 27/100_
($ 320,831.27_____) Dollars (including all renewals, extensions and modifications thereto, the "Promissory Note");

*WHEREAS*, the Promissory Note is secured by a Georgia Security Deed and Security Agreement (the "Security Deed") from Grantor in favor of Bank, dated ___FEBRUARY 16, 2007_____, of record on FEBRUARY 21_____, 2007___ in Deed Book 1393____, Page _0706_____, in __TROUP_____ County, Georgia Records, which conveyed certain real property and other property described on Exhibit "A" attached hereto and incorporated herein by reference hereto ("Property");

*WHEREAS*, Grantor (or Borrower) and Bank have agreed to an extension in the maturity date of the Promissory Note, as evidenced by that [x] Note Modification Agreement or [ ] Modification, Renewal and Restatement of Note (check one) dated as of the date of this Agreement;

*NOW; THEREFORE*, for and in consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor and Bank hereby agree as follows:

1.    The recitals stated above are true and correct in all material respects and shall be incorporated into the body of this document.

2.    The Security Deed is hereby modified so as to reflect that the current maturity date of the Promissory Note of _____March 27, 2011____ has been extended to the new maturity date of _April 27, 2012____ .

3.    Grantor represents and warrants to Bank the following: (a) Grantor is in compliance with the terms and provisions of the Security Deed in all respects; (b) no lien or encumbrance has been recorded affecting the real property covered by the Security Deed; and (c) Grantor has paid all ad valorem and other property taxes, if any, due and payable as of the date of this Agreement.

1594GA (0404)

4. This Agreement shall be governed by the laws of the State of Georgia.

5. Except as modified herein, all of the terms and provisions of the Security Deed remain in full force and effect. Time is of the essence of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal or have caused this Agreement to be executed by their respective duly authorized officers.

Signed, sealed and delivered in the Presence of:

Unofficial Witness: _____

Notary Public _____

Commission Expiration Date _____

Signed, sealed and delivered in the Presence of:

Unofficial Witness: _____

Notary Public _____

Commission Expiration Date _____

Signed, sealed and delivered in the Presence of:

Unofficial Witness: _____

Notary Public *Pauline V. Crawford*

Commission Expiration Date 04-07-2015

Signed, sealed and delivered in the Presence of:

Unofficial Witness: _____

Notary Public *Pauline V. Crawford*

Commission Expiration Date 04-07-2015

GRANTOR(S)

_____
(Corporate Name)

By: _____

Title: _____

By: _____

Title: _____

_____
(Partnership, LLC, LLP, LLLP Name)

By: _____

Title: _____

By: _____

Title: _____

By: _____

Title: _____

(Individual Grantor)

KENNETH GREEN

(Individual Grantor)

CYNTHIA GREEN

BANK:

BRANCH BANKING AND TRUST COMPANY

By: _____

Title: Assistant Vice President

1594GA (0804)

Bk 01610   Pg 0718

## EXHIBIT "A"
[Attach Legal Description]

TRACT ONE:
415 Ashford Circle, LaGrange, GA

All that lot, tract or parcel of land situate lying and being in Land Lots 18 and 19 of
the 6th Land District, Troup County, Georgia, being all of Lot 11 of Ashford Place
Subdivision as shown on that plat of said subdivision recorded in Plat Book 20B,
Page 112, Troup County, Georgia, records and more particularly shown and
described on that certain plat of survey prepared by Henry H. Jackson, Georgia
Registered Land Surveyor No. 2274, dated June 6, 1990, recorded in Plat Book 33,
Page 168, aforesaid records, which plats are by reference incorporated herein and
made a part hereof for the purpose of a more complete and accurate description.

The above-described property is subject to the Covenant and Restrictions for Ashford
Place Subdivision recorded at Deed Book 457, Page 753, Troup County, Georgia
deed records, as amended.

TRACT TWO:
517  Boyd Road, Hogansville, GA

All those lots, tracts, or parcels of land with all buildings and improvements thereon,
situate, lying and being in Land Lot 128 of the 12th Land District, Troup County,
Georgia, and being Lots Three (3), and Four (4), Block AB@ as per plat of the Oak
Spring Subdivision of the J. R. Cooper Estate made by R. M. Ross, C.E., dated April
1941 and recorded in Plat Book 3, Page 2 in the Office of the Clerk of the Superior
Court of said Troup County, Georgia.

TRACT THREE:
210 White Street, Hogansville, GA

All that tract or parcel of land with all buildings and improvements thereon, situated
in or near the City of Hogansville, County of Troup and State of Georgia, shown on
First Supplement to Village Property Map for United States Rubber Company, Stark
and Reid Mills, Survey and Plat by Clarence J. White, Jr., dated May 6, 1955, as Lot
No. 10 in Block 22, said plat being recorded in the Office of the Superior Court of
Troup County, Georgia, in Plat Book 2, Pages 369 and 370.

**EXHIBIT "E"**
**Assignment**

Deed     Doc: ASGN
**Recorded 07/13/2016 12:31PM**

JACKIE TAYLOR
Clerk Superior Court, TROUP County, Ga.
Bk **01838**     Pg  **0338-0340**

*(Space above is for Recorder's use)*

Prepared By:
Branch Banking and Trust Company
445 Dexter Avenue, Suite 8000
Montgomery, AL 36104

When Recorded Mail To:
   Return to:
   Document Recording Services
   P.O. Box 3008
   Tallahassee, FL 32315-3008

REF118452859A

## ASSIGNMENT OF SECURITY INSTRUMENTS

BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation ("Assignor"), whose address is 445 Dexter Avenue, Suite 8000, Montgomery, AL 36104, Attention: John E. Beasley, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns, transfers, sets over and conveys to SUMMITBRIDGE NATIONAL INVESTMENTS V LLC ("Assignee") whose address is 1700 Lincoln Street, Suite 2150, Denver, CO 80203, all of Assignor's right, title and interest in and to those Security Instruments described on Schedule "A", together with the real property therein described as the same may have been assigned, amended, supplemented, restated or modified.

TO HAVE AND TO HOLD the same unto Assignee and its successors and assigns forever.

This Assignment is made without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever.

Effective as of June 28, 2016.

Bk 01838 Pg 0339

BRANCH BANKING AND TRUST COMPANY,
a North Carolina banking corporation

By: _____
Name: John E. Beasley
Title:   Senior Vice President

(Affix Bank Seal)

Signed, sealed and delivered
this 27th day of June, 2016
in the presence of:

_____
Unofficial Witness  Annita Bledhen

_____
Notary Public

My Commission Expires: ___10/27/18___



Bk **01838** Pg **0340**

SCHEDULE "A"
*Assignment of Security Instruments*

Georgia Security Deed and Security Agreement dated February 16, 2007 granted by Kenneth Green and Cynthia Green in favor of Branch Banking and Trust Company and recorded on February 21, 2007 in Book 1393 at Page 706 in the Office of the Clerk of Superior Court of Troup County, Georgia.

Modification Agreement to Georgia Security Deed and Security Agreement dated April 27, 2011 granted by Cynthia Green in favor of Branch Banking and Trust Company and recorded on May 5, 2011 in Book 1610 at Page 716 in the Office of the Clerk of Superior Court of Troup County, Georgia.

**EXHIBIT "F"**
**Foreclosure Advertisement**

Troup County News

**Troup County News**

Publication Name:
**Troup County News**

Publication URL:
**www.troupcountynews.net/site/contact-us/**

Publication City and State:
**LaGrange, GA**

Publication County:
**Troup**

Notice Popular Keyword Category:

Notice Keywords:
**summitbridge**

Notice Authentication Number:
**201909161456443342271**
**855355241**

Notice URL:

Back

Notice Publish Date:
Friday, September 13, 2019

**Notice Content**

gpn11
LEGAL: 19-720
SEPTEMBER 6, 13, 20, 27, 2019
NOTICE OF SALE UNDER POWER
STATE OF GEORGIA
COUNTY OF TROUP
Under and by virtue of the power of sale contained in that certain Georgia Security Deed and Security Agreement executed by Kenneth Green and Cynthia Green (together, Grantor) to Branch Banking and Trust Company, dated February 16, 2007 and recorded in Deed Book 1393, Page 706, Troup County Records, as affected by certain Modification Agreement of Georgia Security Deed and Security Agreement dated April 27, 2011 and recorded in Deed Book 1610, Page 716, aforesaid records, and that certain Assignment of Security Instruments from Branch Banking and Trust Company to SummitBridge National Investments V LLC dated June 28, 2016 and recorded in Deed Book 1838, Page 338, aforesaid records (collectively, as modified and/or amended from time to time, the Security Deed), the undersigned will sell at public outcry before the door of the Courthouse of Troup County, Georgia during the legal hours of sale on the first Tuesday in October 2019 to the highest and best bidder for cash the following described property (the Premises), to wit:
TRACT ONE:
415 Ashford Circle, LaGrange, GA
All that lot, tract or parcel of land situate lying and being in Land Lots 18 and 19 of the 6th Land District, Troup County, Georgia, being all of Lot 11 of Ashford Place Subdivision as shown on that plat of said subdivision recorded in Plat Book 20B, Page 112, Troup County, Georgia, records and more particularly shown and described on that certain plat of survey prepared by Henry H. Jackson, Georgia Registered Land Surveyor No. 2274, dated June 6, 1990, recorded in Plat Book 33, Page 168, aforesaid records, which plats are by reference incorporated herein and made a part hereof for the purpose of a more complete and accurate description.
The above-described property is subject to the Covenant and Restrictions for Ashford Place Subdivision recorded at Deed Book 457, Page 753, Troup County, Georgia deed records, as amended.
TRACT TWO:
517 Boyd Road, Hogansville, GA
All those lots, tracts, or parcels of land with all buildings and improvements thereon, situate, lying and being in Land Lot 128 of the 12th Land District, Troup County, Georgia, and being Lots Three (3), and Four (4), Block AB@ [sic] as per plat of the Oak Spring Subdivision of the J.R. Cooper Estate made by R.M. Ross, C.E., dated April 1941 and recorded in Plat Book 3, Page 2 in the Office of the Clerk of the Superior Court of said Troup County, Georgia.
TRACT THREE:
210 White Street, Hogansville, GA
All that tract or parcel of land with all buildings and improvements thereon, situated in or near the City of Hogansville, County of Troup and State of Georgia, shown on First Supplement to Village Property Map for United States Rubber Company, Stark and Reid Mills, Survey and Plat by Clarence J. White, Jr., dated May 6, 1955, as Lot No. 10 in Block 22, said plat being recorded in the Office of the Superior Court of Troup County, Georgia, in Plat Book 2, Pages 369 and 370.
Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property, and all replacements and additions.
TO HAVE AND TO HOLD all the Premises to the use, benefit and behoof of Lender, its successors and assigns, IN FEE SIMPLE forever.
The debt secured by the Security Deed is evidenced by a Promissory Note dated February 16, 2007, made by Grantor to the order of Branch Banking and Trust Company in the original principal amount of $320,831.27, and assigned to SummitBridge National Investments V LLC (as modified, amended, restated, or replaced from time to time, the Note), plus interest from date on the unpaid balance until paid, and other indebtedness. SummitBridge National Investments V LLC is the present owner and holder of the Note by virtue of the assignment referenced above.

Default has occurred and continues under the terms of the Note and Security Deed by reason of, among other possible events of default, the nonpayment when due of the indebtedness evidenced by the Note and secured by the Security Deed and the failure to comply with the terms and conditions of the Note and Security Deed. By reason of this default, the indebtedness evidenced by the Note has been accelerated and the Security Deed has been declared foreclosable according to its terms.

The debt remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in the Security Deed and by law, including attorneys fees, notice of intent to collect attorneys fees having been given. Said property will be sold subject to any outstanding ad valorem taxes and/or assessments (including taxes which are a lien but are not yet due and payable), possible redemptive rights of the Internal Revenue Service, if any, any matters which might be disclosed by an accurate survey and inspection of the property, and any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed. The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and (2) to final audit and confirmation of the status of the loan and collateral with the holder of the Security Deed.

SummitBridge National Investments V LLC reserves the right to sell any portion of the aforementioned Premises in one or more separate sales, to postpone the sale of any portion of the Premises, or to withdraw any portion of the Premises from sale.

To the best of the undersigneds knowledge and belief, Tract One is presently owned by Kenneth L. Green and Cynthia R. Green, and Tract Two and Tract Three are presently owned by Kenneth Lewin Green. To the best of the undersigneds knowledge and belief, the parties in possession of Tract One are Kenneth L. Green and Cynthia R. Green, and tenants holding under Kenneth L. Green and Cynthia R. Green, and the party in possession of Tract Two and Tract Three is Kenneth Lewin Green, and tenants holding under Kenneth Lewin Green.

SummitBridge National Investments V LLC, successor by assignment from Branch Banking and Trust Company.

Michael R. Wing, Esq.
Balch and Bingham, LLP
30 Ivan Allen Jr. Blvd., NW
Suite 700
Atlanta, Georgia 30308-3036
(404) 962-3574
THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Back

## VERIFICATION

Personally appeared before me, came Michael Florence, who, after first being duly sworn, did state that the factual statements contained in the Petition to Quiet Title are true and correct.

This 17th day of September, 2019.

FREEPORT TITLE & GUARANTY, INC.,
AS TRUSTEE OF THE TROUP COUNTY
THREE TRUST

Michael Florence, President

Sworn to and subscribed before me
This 17th day of September, 2019

Notary Public

# Exhibit "C"

IN THE SUPERIOR COURT OF TROUP COUNTY
STATE OF GEORGIA

FREEPORT TITLE & GUARANTY, INC.
as TRUSTEE OF THE TROUP COUNTY
THREE TRUST,

      Petitioner,

v.

SUMMITBRIDGE NATIONAL
INVESTMENTS V, LLC,

      Respondent.

Civil Action File No. 19-CV-0535

## NOTICE OF FILING OF NOTICE OF REMOVAL

Respondent SummitBridge National Investments V, LLC ("SummitBridge"), hereby notifies the Court that this matter has been removed to the United States Bankruptcy Court for the Northern District of Georgia ("Bankruptcy Court"). SummitBridge further shows the Court as follows:

1.      SummitBridge has filed a Notice of Removal in the Bankruptcy Court. A copy of the Notice of Removal is attached hereto as **Exhibit A**.

2.      This case is now pending in the Bankruptcy Court.

3.      SummitBridge respectfully requests no further proceedings or actions be conducted or undertaken in this case unless it is remanded pursuant to 28 U.S.C. § 1446(d).

[Signature on Following Page]

Respectfully submitted this 28th day of October, 2019.

*/s/ Michael R. Wing*
Michael R. Wing
Georgia Bar Number 770463
Austin B. Alexander
Georgia Bar Number 926059

**Balch & Bingham LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
mwing@balch.com
aalexander@balch.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2019, a true and exact copy of Respondent SummitBridge National Investments V, LLC's Notice of Filing of Notice of Removal was filed with the Court using the PeachCourt system and served upon Petitioner Freeport Title & Guaranty, Inc. as Trustee for the Troup County Three Trust via First Class United States Mail at 5775 Glenridge Drive, Building B Suite 550, Atlanta, GA, 30328, USA care of its registered agent Mike Florence.

*/s/ Austin B. Alexander*
Austin B. Alexander
Georgia Bar Number 926059